Case number 253507, USA v. Evan Galasso. Argument not to exceed 15 minutes per side. Mr. Nemechek, you may proceed. Good afternoon, Your Honors. May it please the Court, Eric Nemechek on behalf of the appellant. Your Honors, this appeal concerns the District Court's ruling on a motion to suppress statements that were obtained during the course of a search warrant that was executed at the defendant's house in connection with a child pornography investigation. There were actually two rounds of interrogations that occurred, the first one at his residence and the second later that morning at an FBI office in Cleveland. Just by way of background, the search warrant was executed, I believe, at around 7 o'clock in the morning in May of 2024 at his house. There were 17 officers present, most if not all of whom were armed and several of whom had their weapons drawn. They knock on the door and Galasso is ordered to put his hands behind his back, walk out of the house backwards, where he's immediately handcuffed, patted down, and then taken to a police vehicle that's parked on the street, placed in the rear of the vehicle. Mr. Nemechek, I think we're pretty familiar with the facts, so let me tell you what I'm interested in, at least personally what I'm curious about here. The District Court suppressed the statements made in the car after, I think it was, 26 minutes, but not in the first 26 minutes. And that's one of the things that you're challenging. Government doesn't challenge the second part of the in-car interview. I'm trying to figure out how that fits in with these other arguments, or in other words, whether it's even relevant to the other arguments. You're claiming that the unsuppressed statements tainted the interview that took place in the FBI office. Correct. And you're claiming that he unequivocally invoked the right to counsel, so you shouldn't count any of these statements. Correct. Am I right so far? Yes. Okay, so here's the question. I want you to assume, for purposes of my question, that we find that whatever happened in the car didn't taint the FBI interview. And secondly, I want you to assume that we find that he either didn't include the word attorney in what he said in the car, or even if he did, that the officer didn't hear it. So I know you don't agree with either of those, but if you assume the predicate of my question, does it matter in this case then whether he was or was not in custody for the first 23 minutes? Well, I think it matters to the extent that any of the statements that he made prior to that 26-minute mark would have been suppressed and excluded as well from trial. I don't recall specifically what all of those questions were, but I believe there was some discussion relative to his Internet usage and BitTorrent usage as well, which would have been relevant to the prosecution. But if there isn't any taint, he clearly admitted to all of the charges in the interview in the FBI office, right? Correct. So what difference does it make if there isn't a taint what he did or didn't say that was or wasn't suppressed in the car? I'm not sure I necessarily understand the question. I apologize, Your Honor. Okay. He confesses to the FBI agent in the office. Now, you're dead in the water unless—and he was Mirandized. Correct. So you're dead in the water at that point unless you can get that thrown out, right? Correct. Now, your theory to get that thrown out is taint, right?  And I'm asking you to assume that we find there wasn't a taint. So at that point, we would have to say he should have suppressed the first 26 minutes and he should have the right to withdraw his plea and there's some reason to believe that he would then not plead guilty. And that just doesn't make any sense given the assumptions that I'm asking you to make. So that's what I'm giving you a chance to address. Sure. And I think that to the extent that the court were to find that there was— like we're disagreeing with the district court's determination that at the 26-minute mark— I'm trying to figure out whether you even get to it. That's what I'm trying to figure out. If there's no taint. To the extent that we start from the premise that the district court's finding that he was in custody at the 26-minute mark and was entitled to Miranda stands, if we're not disregarding that conclusion, then I would say that from that point forward, as the court says, that any statements that he makes are subject to suppression because he wasn't properly Mirandaized. He's in custody. He was entitled to Miranda warnings. And then the relevant inquiry becomes, okay, is there a sufficient gap or change in circumstances so as to allow his subsequent Miranda waiver? That all goes to whether there was a taint. In my question, I'm asking you to assume there was no taint, either because it was different officers, different period of time, different location, all the things that we look at. I want you to assume no taint. Does it matter whether he was in custody in the car? I'm not necessarily sure whether it matters that he was in custody in the car, I guess. Well, then why are you asking us to suppress the statements in the first 23 minutes, at least under my hypothetical, if it doesn't matter? Well, if I didn't believe that there was taint or that he wasn't in custody, then I wouldn't be arguing to you that I think that those statements should be suppressed. So you lose on the second issue, right? You lose on the FBI interview part. You have two issues, I think. The first 26 minutes and the FBI. You lose. We think you lose on the FBI. Is there any sense or chance that your client would have not entered a guilty plea just based upon trying to suppress something from those first 26 minutes? I don't know about from the first 26 minutes. I would tend to agree that the most damaging statements come. I agree, too. I agree, too. So this is a very, I think, important question. What are the incriminating statements in the first 26 minutes that you wanted to get suppressed? I believe that there were statements regarding Internet activities. I don't think that there were specific admissions relative to child pornography that occurred perhaps in the first 26 minutes of the interview. I'm not, again, not conceding necessarily that he wasn't in custody and shouldn't have been Mirandized, but to the extent that we're talking about excluding statements from the first 26 minutes, I don't necessarily know if there was anything as damaging as what occurred the time after the 26 minutes. Don't necessarily know is not good. I don't believe there were. There either was or there wasn't. Yeah, I believe that the subject of the inculpatory statements were after the 26-minute mark and at the FBI office subsequent thereto when he's interviewed later that morning. Let me be even more pointed. Are you claiming that he should have the right to withdraw his plea if we find there was no taint in what happened earlier for what he said to the FBI agent in the FBI office? Are you still saying that he should have the right to withdraw his plea? I think to the extent that this court were to disagree with the district court's findings on either front, maybe not perhaps on the original 23 minutes, but to the extent that the court were to agree that there was an issue with not receiving the Miranda warnings when he's in custody during the course of his interrogation at the house and then to the extent the court were to find and agree that there wasn't sufficient dissipation of that taint at the FBI office, then I would submit that yes, he should be entitled to withdraw his plea. The corollary of that is if we find there isn't a taint, then you're not asking us to suppress the earlier statements because it doesn't matter. Am I being fair to what you just said? I'm not necessarily sure suppressing the earlier statements would impact whether or not he would have entered a plea or withdrawn if that's all we were talking about. I suppose that's all we're talking about. If that's all we're talking about, but I don't necessarily know. Should we remand it? I mean, is your client going to do something different? We uphold the information coming in from the FBI interview, so none of that should be suppressed. Is your client going to do anything different? Is there any chance your client's going to do anything different? I'm not necessarily sure if the court would have ruled that the statements that were made to the FBI would similarly be admissible as the district court ruled here. Then I don't necessarily think that it would alter his decision about whether or not he would go to trial if those statements were to be admitted. If all we're talking about is suppressing the first 23 minutes, I mean, again, I haven't had this conversation with him of just looking at it practically speaking. If he's not making incriminating statements in the first 23 minutes of the interview and we're concerned more so about the inculpatory statements made thereafter during the interview at the house and at the residence, then I think that would be more significant to the decision about whether or not it would impact his decision to go to trial or the strength of the government's case, I guess. Do you think that he should be given that opportunity, or should a court look at the evidence and say, oh, rationally this wouldn't make a difference? I still think it would be his decision to make. I don't want to speak for him having not had that conversation. You are making a lot of assertions that are attributable to him because you're his lawyer, so you should be very careful about the way you present. I'm not chiding you. It's very important in our decision-making. I tried to qualify, I guess, my response at the outset. If I wasn't clear, let me be clear. I haven't had this conversation. I'm not speaking for him in what his decision would be depending on how this court were to rule on the issue itself. I was just sort of answering the hypothetical question about would it have a significant impact, in my opinion, if all we were to do was to address the first. How about as his lawyer? How about as your client's lawyer? I'm hesitant to sort of say what my advice to him would be relative to what he should do depending on the court's decision about the first. Not his advice. What do you want us to do if you lose some? If we find there's no taint, are you asking us to still address whether he was in custody in the first 26 minutes and, therefore, what he said in the first 26 minutes should be suppressed? Are you asking us to do that? I still believe that if he's in custody and he does not receive Miranda warnings, then all of his statements should be suppressed, regardless of whether or not they are inculpatory or not. So you want us to suppress it? I would submit that it should be suppressed, yes. And if we find there's no taint, then just explain to me very simply, if you would, why should we address this? If we find it wasn't tainted, he clearly confessed, right? At the FBI office. Yes, at the FBI office. So if we find that statement is not tainted, then you've said, yes, we should still deal with suppression of what occurred in the car. I get that. So just then close the loop. Tell me why it's still important for us to address whether he was in custody in the first part of the interview in the car. I guess to the extent that we're talking about the taint from the initial interrogation being tainting the FBI interview, I think we also argued in the brief that his, I guess, his consent, his waiver of his Miranda rights in and of itself was involuntary, which didn't necessarily, I mean, was partially related to his interactions with law enforcement earlier that day, but also related to when he gets there and sort of how it's conveyed, what they're going to be focusing on with respect to the interview, that they're going to be asking him about hands-on contact offenses and that he executes the Miranda waiver and then is questioned regarding the same sort of information that he's questioned about while at the residence. Okay. I think we have a rebuttal. You might think about those questions. If you have any different answer, let me come back. Feel free to supplement. Good afternoon, Your Honors. My name is Joseph Walsh on behalf of the United States. This court should affirm the district court's ruling on defendant suppression motion for several reasons. First, the district court did properly determine that Mr. Colosso was not in custody until at least 26-and-a-half minutes into questioning at his residence. Second, Mr. Colosso never unambiguously invoked his right to counsel while he was in custody. And third, his later statements made in connection with the polygraph exam were voluntary. What changed at the 26-minute mark? Why was he not in custody and then he was in custody? The key factor that changed there was the manner of the questioning, Your Honor. At that point in time, Mr. Colosso stated that he did not want to answer any more questions. And instead of honoring that request, the agents immediately moved to a direct point of question. Didn't he say that once before? He did say that once before. And at that point in time, the agents did honor that request. They stopped questioning on that subject. Not fully. Didn't they then start questioning him again? After a break in time, they started questioning him about just issues to officer safety and whether or not they could access to the garage. And at that point in time, the search team was still clearing the house. And so those questions were really just targeted at, and I think this is bared out in the record, just enabling the search to continue. So you're saying that questioning in a car, which happens all the time, that becomes custody because the police then get around to asking, did you do it? That then converts it into a custodial interrogation, right? It's one factor among many, yes. All right. So do you have any cases that say that? You've conceded as to the propriety of the judge's ruling in what happened after 26 minutes. You've explained why that is. I'm just trying to figure out why you conceded that and how it's different at the end from the beginning beyond the question of did you do it. I don't have a case to directly point on that issue. I guess, and the government is not appealing here, so we are just merely arguing that the district court was correct. The district court properly weighed the relevant factors in the district court's determination. At that point, the manner of the questioning was one factor that ultimately shifted this. That was the only factor that changed, right? That was the only factor that changed. Nothing else changed. Correct, Your Honor. It's just the manner, because there were questions before and there were questions after. You're saying there are more penetrating questions later on. Exactly. And the question before, the 26 mark is somewhat misleading because that's not 26 minutes of questioning. There's long breaks of silence in that time period, and the first nine minutes is really just, are you comfortable, where do you work, what's going on? And then there's a break in time, and then there's a little more questioning about general background. And so the 26-minute mark, the time is one factor that is to be considered, and the district court did consider that ultimately in its custody finding. But the nature of the questioning and the agent's immediate response of, I'm going to disregard your request to stop speaking and let me be frank with you, are we going to file a child pornography here, that is what the district court determined, and that determination was appropriate in this case, Your Honor. You've heard all of our questions that we asked of your friend on the other side about if we find no taint here, it doesn't matter whether he was in custody at any time during the car. So what's the government's position on that? Do we need to get to that, don't we need to get to that, and why? I think the court should affirm the district court's decision for the reasons noted in our brief, and that he was not in custody for those first 26-and-a-half minutes. But ultimately it is somewhat immaterial because the later statements made at the FBI were voluntary for a number of reasons, and those statements are really what dictate the case here. In the first 26-and-a-half minutes, there's barely any incriminating statements. He admits to being familiar with BitTorrent. Didn't he say he downloaded it, or doesn't he say he uses it or something? More than just familiar? I believe that's after the 26-and-a-half minute mark. He's aware of BitTorrent. He may have said he's used it in the past, but the prospect of child pornography, any of that kind of material, is not in the first 26-and-a-half minutes. Again, it's very non-confrontational, brief, limited questioning that is broken up by long stretches of silence, Your Honors. So how would the harmless error review work in the context of a plea agreement? Should it be on the court to say, well, maybe the court should have suppressed more stuff, but there wasn't really a ton of incriminating stuff in there, we don't think it would make a difference in the defendant's decision to plea, or do you send that back to the defendant to actually decide whether they want to continue their plea? Because, of course, the plea is contingent upon this appeal of this issue. I think, Your Honor, you'd have to throw it back to the defendant in this situation. Again, I don't think there would be good grounds to withdraw the plea short of this court suppressing the later statements, which would be an incorrect decision. Like there wouldn't be good grounds, like it wouldn't be a good reason, like the defendant probably wouldn't do it, but you would say legally the defendant could do it. I'd have to go refer back to the specific language of the plea agreement, but I think if this court rules in the defendant's favor on the suppression motion, I think the defendant then may have the chance to decide whether or not to address the plea. And even if it's just on part of the suppression motion, like for the beginning 26 and a half minutes? I believe so, Your Honor, but again, the government's position is that the district court's decision is correct. We take your decision, and obviously we have your briefing on that point too, of course. But no, I think the district court's decision was correct with respect to the custody decision. I'm also happy to move on to the other issues. One argument could be that this is a harmless error for the reasons that Judge McKee described and that no reasonable defendant would change their plea simply because they won on this sort of minor issue and they lost on the really important issue. That would be one way to look at it, but that's not what you're asking us to do? No, I think that is a proper way to look at it, Your Honor. Well, it's different than what you said before you said we should do it. You just said it had to go back to the defendant. I think no one wants to take a position on anything. We have to. I know you have to. We need your help. I think, Your Honor, Judge Rehler's statement is the correct statement of law, and I'll retract what I said previously, is that, yes, there is no reason that he should be able to withdraw a guilty plea if this court addresses the first 26 minutes in contrast to the district court. There's nothing incriminating in those first 26 minutes, and there would be no good grounds essentially to withdraw the guilty plea. This case turns on, and as this court has noted, the later statements at the FBI and the statements that were made in between the 26-minute mark and the statements that were made. I mean, it might be a bad decision or an unadvisable one, but he pled guilty contingent upon being able to bring this appeal, and he would, in this hypothetical, have prevailed at least in part. Does that not, just by the terms of the plea agreement, you know, kind of suspend the contract? I mean, to the extent that we look at plea agreements like contracts, right, it says, okay, I'm pleading guilty, I'm accepting all of this, but he pled contingent upon being able to take this issue on appeal, and, you know, if you win in part, maybe he doesn't want the plea. I mean, maybe it wouldn't be what the attorney would advise, maybe it wouldn't be what I advise, but what happens to the contract itself isn't kind of, wasn't the contract contingent? The government does treat the plea agreements as a contract, and I don't believe the plea agreement specifies, you know, if you lose on this issue, you may withdraw your plea. If you lose on this issue, you may withdraw your plea. It's just contingent on this court's ruling on the suppression motion. Well, at the end of our colloquy, your front and the other side did change his approach slightly to basically say he was duped. So whether he wins or loses on taint, he still thinks we should suppress the statements and the confession in the FBI office, I guess because he was duped into how they got him to agree to go down there. So what's your response to that? Your Honor, the record shows that he was not duped. Mr. Colosso was informed prior to going to the FBI that the polygraph exam was voluntary. He was told that it would focus on hands-on offenses. The polygraph exam focused on those hands-on offenses, two questions specifically. He was told before going to the polygraph exam that he was free to leave the agent's presence and drive himself. Upon arriving at the FBI, he was then presented with a polygraph consent form that said this was voluntary, that he could refuse to stop answering questions at any time, that he could refuse to stop the test entirely. And then after that, an agent went over a Miranda rights consent form with him, and he waived those rights. So there's nothing in the record to suggest that Mr. Colosso was duped in any form or fashion. And so that is the government's position with respect to that issue, Your Honor. And I think all the other factors under Seibert, as the district court properly concluded, also showed that his later statements were voluntary. There was minimal overlap between the interrogation at his residence and the questioning at the FBI, the different locations separated by time, and separated by all those advisements of the voluntariness of the statement and his various rights. In addition to that, there was no improper continuous police personnel there. A different agent did the questioning at the FBI. And the questioning was not a continuous confession interrupted by a midstream Miranda warning. This was a break in time. Agent Pija testified at the suppression hearing that he essentially begins anew. He advises Mr. Colosso of all these rights, of the voluntariness of the polygraph exam, and then he starts with basic background information. He goes through his sexual past, sexual behaviors, touches on child pornography because that is a necessary component to ultimately get to the hands-on offenses questions that form the basis of the polygraph exam, and then goes on from there. And so under Seibert, the factors, as the district court properly determined, show that his statements at the FBI were voluntary and that he was not duped in any form or fashion. And I don't even know if the defense made that argument in its brief. I don't believe I've seen that in their briefing, so that might be a new theory here today. But again, nothing in the record suggests that he is duped. He knew going in, a reasonable person in his shoes would have known that the polygraph questioning was voluntary and that he could have stopped it before it began, he could have stopped it at any point in the middle, and he could have stopped and refused to answer any specific questions. So with that, Your Honor, unless the court has any additional questions for me, I would yield my time. Thank you. Thank you. I just wanted to briefly address what opposing counsel just referenced with respect to the cyber factors quickly. With respect to the first two factors, the completeness of the questions and the overlapping nature, I think what's relevant here is similar to the Ashmore case that we cited in the brief. The questions asked during the interrogation at the residence were essentially, even though they were limited, were all that they needed in order to formulate a confession to the specific crimes that they were investigating, and that was the subject of the search warrant. That information is then conveyed admittedly by the agent on scene to the FBI agent at the FBI office, as well as – Could I stop you right there? Sure. I think what's interesting about this is that you're just assuming that the FBI polygraph examiner knew everything that the agents had talked to Mr. Glasso about in the car. But when you had that examiner – were you the trial attorney? Yes. All right. When you had the FBI examiner on the stand in the suppression hearing, you didn't ask him any questions about what he had been told by the FBI agents. Or if you did, they were absolutely minimal questions. So how do we accept your argument today that he knew all the things that the people in the car had asked because they told him? Well, I believe that the questioning of the other two agents, not necessarily Agent Pagia, but Agent Oltman and Agent Scalise, referenced that they specifically conveyed information regarding his Internet and child pornography-related activities. And I think in the district court's opinion – Okay. So that's the information that you say was transmitted? Correct. Okay. The information about the admissions related to child pornography activity. Correct. And again, I don't think that they – But you're conflating things, you say, about child pornography activity. He was asked if he was familiar with, what is it called, BitTorrent?  All right. He was asked that. He wasn't asked if he then used that to download child pornography in the car. There were questions related to his downloading of child pornography. In the 26 minutes? In the initial 26 minutes? Yes. Right. I don't believe in the initial 26 minutes. Because everything after that was suppressed. Correct. But you're saying – But it still would have been conveyed to them. Right. You're saying what they learned in that suppressed part, they did tell the examiner?  Okay. That's what I was – Correct. And the relevance of it is, again, taking out the first 26 minutes, to the extent that he obtains pre-Miranda and statements that were ordered suppressed, that information is then conveyed to the agent who is conducting the polygraph examination. And then that agent asks the questions to get confirmation after sort of sanitizing it or attempting to insulate it by way of getting a Miranda waiver signed. I think that that all goes into the determination under CYBIRT of whether or not there's this continuity, whether or not the initial taint is affecting the validity of the subsequent interviews and statements at the FBI office. When Agent Piazza is doing the questioning, does she reference directly, like, well, Agent So-and-So told me that you said this? Sorry, Agent So-and-So. Is that material directly brought in? I understand you're saying, like, well, they told the FBI agent who was then doing the questioning at the FBI office. But was it directly referenced in the way that we think about, like, hey, the cat's already out of the bag? We already know that you told the agents in the car that you had downloaded things or that you'd been on these websites. I don't recall from the recorded interview at the FBI office how it was presented, just that the information that was obtained after the district court determined he was in custody had been communicated to Agent Piazza, as well as guidance as to topics and questions that they thought that he should ask. And, you know, while I understand there's this explanation that certain topics related to child pornography had to be ferreted out because it could impact, you know, the polygraph examination on child molestation, that doesn't necessarily explain why they would have him execute a written confession admitting to child pornography offenses. If all it was was just to ferret it out, you'd ask it during a pretest interview. It's clear that they wanted to obtain a written confession after he signed a Miranda warning, after they had interrogated him and gotten the same information at the house without a Miranda warning, in order to be able to use it to prosecute him in this case. And I think that that's significant. I think I'm out of time unless there's any other questions. Thank you very much. Thanks to both sides, and the case will be submitted.